29342.   WORTHINGTON PUMP AND MACHINERY COR-
PORATION *v.* BRIARCLIFF INCORPORATED.

DECIDED MARCH 20, 1942.

76

*George B. Rush, Alston, Foster, Moise & Sibley,* for plaintiff.
*James A. Branch, Thomas B. Branch Jr.,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) The court did not err in denying the motion to strike the plea of set-

off, and in overruling the demurrers to the answer and plea as amended. In order to pass on some of the grounds of the motion and demurrer a consideration of the entire written, contract involved in the case is necessary, and while a part of the contract is embraced in the defendant's pleadings the entire contract is not attached thereto or embodied therein. The fact that the entire written contract was attached to the replication or answer of the plaintiff to the plea of set-off would not entitle such contract to be considered in passing on the attacks made by the plaintiff, by way of such motion to strike and demurrers, on the pleadings of the defendant. The plaintiff's pleadings were not in issue under the motion to strike the plea and answer and the plaintiff's demurrers thereto, but only the sufficiency of the defendant's pleadings was involved.

The gist of the counter-claim or cross-action is that the plaintiff breached or failed to perform a certain duty or obligation imposed on it by the terms of a written contract, by which the defendant purchased from the plaintiff a gas engine to be installed on the defendant's premises, thereby damaging the defendant in an amount in excess of the sum due by the defendant to the plaintiff on open account and for which the plaintiff brought suit. The contract for the purchase of this machinery provided that the plaintiff agreed to furnish and deliver to the defendant certain machinery including a "Worthington four-cylinder four-cycle gas engine with cylinders;" the engine to be directly connected to a described electric generator, and that the engine was to be furnished complete with certain parts, fixtures, and accessories, and that there were to be furnished the "services of erector to supervise installation and starting." It appears that the "erector" referred to was a person to supervise the installation of the engine and parts and the starting thereof. The defendant claims that the engine was installed in an unskillful and improper manner by this erector furnished by the plaintiff, as follows: the engine was so installed that the water tank, from which the water for cooling the engine was to be obtained and which was to flow through the pipe to the engine by gravity pressure, was too low to furnish sufficient gravity pressure, and that the plaintiff knew this at the time the engine was installed through the erector furnished by it, because such erector knew when he installed the engine and started the machinery that this

tank was not elevated sufficiently to properly provide water to cool the engine. The defendant contends that as a result of this the engine did not run properly, became overheated, and the damages sued for were caused.

The contract further provided that "all machinery shall be installed and put in operation by and at the expense of the purchaser, unless otherwise expressly stipulated herein," and that "if vendor undertakes herein to supervise erection, or if purchaser desires services of engineers or mechanics to supervise erection, such engineers and mechanics will be furnished by the vendor;" that "where vendor does not assume erection, engineers and mechanics furnished shall be purchaser's employees for whose acts vendor assumes no responsibility." It appears from the contract, which is a printed form of contract, that in the sale of such machinery the plaintiff does not agree to install and put in operation unless it is expressly stipulated in the contract. It is not so stipulated in this contract. It also appears that in some sales the plaintiff undertakes to supervise erection, and in others undertakes to furnish the services of engineers or mechanics to supervise the erection. In the latter event it appears from the contract that any engineer or mechanic furnished by the plaintiff to supervise the installation shall be the employee of the purchaser, that is, the defendant in this case, "for whose acts vendor assumes no responsibility."

The defendant, in its cross-action alleged that the plaintiff "neglected and failed to perform its obligations under said contract to furnish services of a skilled erector and to have the installation and starting of said machinery supervised in a skillful manner;" that the plaintiff, through the mechanic or engineer furnished, "knew" it was not proper to install the engine and connect it with the water flowing from the tank, in that the tank was not elevated sufficiently to have enough water pressure to maintain a flow of water that would keep the engine cool; that with this knowledge the engine was installed and the machinery started, and although it would not operate properly and frequently broke down, as a result of its improper installation as stated, the plaintiff did not inform the defendant that the engine was becoming overheated and would not work properly because it was not given sufficient water to keep it cool; and that "the improper, unskillful and inadequate manner in which said motor was installed and the water supply provided

for" constituted a breach or failure to perform the obligation imposed on the plaintiff by the contract and caused the damages sued for. The written contract did not impose such obligations on the plaintiff. There was no agreement that it would furnish the services of a skilled erector and have the installation and starting of the machinery supervised in a skillful manner, but on the contrary the contract shows that the plaintiff agreed merely to furnish an erector or engineer or mechanic who would supervise the installation and starting of the engine, and that this erector would be the employee of the defendant with his services paid for by the defendant, for whose acts the plaintiff expressly assumed no responsibility.

The defendant's cross-action was a plain attempt to vary the terms of a written contract. Under the written contract no liability was imposed on the plaintiff for the acts of the erector furnished to the defendant to install this machinery, but the defendant expressly agreed that it would pay for the services of such engineer and that he would be its employee. Any oral agreement by the plaintiff at the time or before this written agreement was executed and entered into to the contrary would be merged into and done away with by the written agreement. Any attempt on the part of the defendant to set up such an oral agreement was an attempt to vary the terms of a valid written agreement covering the same subject.

The written contract contained express warranties and agreements, and in such a case the law will not imply that the plaintiff agreed to the contrary. See *Malsby* v. *Young*, 104 *Ga.* 205 (30 S. E. 854) ; Code, § 96-301; 55 C. J. 715.

Under the written contract the verdict in favor of the defendant's counter-claim was contrary to law. The court erred in overruling the plaintiff's motion for new trial on the general grounds.

*Judgment reversed. Sutton and Felton, JJ., concur.*